## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-00231 (ACR)** |
| **v.** | : | |
| | : | |
| **CAMERON CAMPANELLA,** | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Defendant Cameron Campanella has pleaded guilty to two second-degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Campanella to 14 days of incarceration on Count Three followed by 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

### I.      Introduction

Defendant Cameron Campanella, a 46-year-old barbershop owner, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful

1

transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Campanella pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) and 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building). 14 days of incarceration followed by 36 months of probation is appropriate based on an assessment of the relevant sentencing factors. As Campanella neared the Capitol, he recorded how rioters were scaling an exterior wall to gain entry to the Upper West Terrace and, ultimately, into the Capitol building itself. He remained inside the Capitol for less than two minutes. However, Campanella unlawfully entered the Capitol just five months after being convicted for defiant trespassing in Pennsylvania, and Campanella encouraged other rioters to unlawfully enter the Capitol building.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Campanella's crime support a sentence of 14 days of incarceration followed by 36 months of probation in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.        Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense, ECF No. 28, ¶¶ 1-7.

*Defendant Campanella's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Campanella drove to Washington D.C. from York, PA and attended the former President's "Stop the Steal" rally by the Ellipse.  He then marched, to the Capitol and joined the crowd on the West Lawn of the U.S. Capitol grounds.  *See* Image 1.



*Image 1: Screenshot from Exhibit 1 at 0:17*

As Campanella approached the Capitol building, he photographed people scaling a wall that leads to the Upper West Terrace.  *See* Image 2.



*Image 2: Photo from Campanella's cellphone showing
a rioter scaling the West Terrace wall at the Capitol*

As Campanella made his way to the Senate Wing Door, he walked past broken windows and ignored the audible alarm and recorded a bleeding rioter talking about his interaction with police.  *See* Exhibits 2 and 3.



*Image 3: Screenshot from Exhibit 2 at 00:10 showing
Campanella (circled in red) in the Northwest Terrace*



*Image 4: Image showing Campanella (circled in red)
in the Northwest Terrace near a broken window*

Campanella entered the Capitol through the Senate Wing Door at approximately 3:00 pm, walked towards the Crypt, turned around, and exited the building through the Senate Wing Door at approximately 3:01 pm.



*Image 5: Screenshot from Exhibit 4, the Capitol's CCTV, showing*
*Campanella (circled in red) in the Capitol after just walking through the Senate Wing Door.*



*Image 6: Screenshot from Exhibit 4 showing Campanella (circled in red)
before exiting the Capitol through the Senate Wing Doors.*

Campanella filmed his exit.  While the alarm blares, Campanella says "In the Capitol" and then "right here's your cops ready to storm us…ain't nobody scared."  Immediately after he exits the Senate Wing Door, he tells the crowd on the Upper West Terrace "everybody's welcome, everyone's welcome."  *See* Exhibit 5.  About one minute after he left the Capitol Building, Campanella texted one person "In the Capital, in side" and another person "Stormed it, and peed."

On July 7, 2022, an FBI agent attempted to interview Campanella.  Echoing his statements about police on January 6, Campanella said that he was "not scared."  Displaying a lack of remorse, Campanella also expressed his view that investigating the riot was a waste of time.

*The Charges and Plea Agreement*

On July 13, 2023, the United States charged Campanella by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1), (a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), (e)(2)(G). On October 26, 2023, pursuant to a plea agreement, Campanella pleaded guilty to Counts Three and Four of

the Information, charging him with a violations of 40 U.S.C. §§ 5104(e)(2)(D), (e)(2)(G).  By plea agreement, Campanella agreed to pay $500 in restitution to the Architect of the Capitol.

### III.   Statutory Penalties

Campanella now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D), (e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Campanella faces up to six months of imprisonment and a fine of up to $5,000 on each count.  Campanella must also pay restitution under the terms of his plea agreement.  *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).   As the offenses are both Class B Misdemeanors, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence.  In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days of incarceration on Count Three followed by 36 months of probation on Counts Four.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).  The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021).  While assessing Campanella's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors.  Notably, for a misdemeanor defendant like Campanella, the

absence of violent or destructive acts is not a mitigating factor.  Had Campanella engaged in such conduct, Campanella would have faced additional criminal charges.

One of the most important factors in Campanella's case is the fact that he encouraged other rioters to unlawfully enter the Capitol building.  The scene made plain that entry was not allowed – the alarms, the police in riot gear, the broken windows, the sheer number of rioters outnumbering the police.  Despite this, as Campanella exited the building and as the alarm continued to blare, Campanella told other rioters that they were welcome inside.  Accordingly, the nature and the circumstances of this offense establish the clear need for 14 days of incarceration followed by 36 months of probation in this matter.

### B.  Campanella's History and Characteristics

Five months before storming the Capitol, at age 42, Campanella was convicted of Defiant Trespasser Actual Communication to the Actor.  ECF 31 ¶ 28.  Though the exact conduct is unknown, the Pennsylvania statute states:

> A person commits [the offense of defiant trespasser] if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
>
> (i)      Actual communication to the actor.

18 Pa. Code § 3503(b)(1)(i).  This appears similar to Campanella's behavior on January 6, where he entered the Capitol despite overwhelmingly obvious signs that he was not permitted to be there.

Campanella appears to have lived a law-abiding lifestyle until he entered his 40s. Campanella, has been married for over twenty years, and self-reported a "great relationship" with his children.  ECF 31 ¶¶ 36-38.  Campanella enjoys stable employment: he has worked as a barber at Colonial Park Barbershop since 1996 and bought the business in 2017.  ECF 31 ¶ 47.

Campanella has been compliant with his conditions of pre-trial release.  In this case, Campanella's conduct of participating in the storming of the Capitol only a few months after being convicted of a similar offense in his home state demonstrates a very real need for specific deterrence in the form of 14 days of incarceration followed by 36 months of probation.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law.  As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building.  What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration.  "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.  There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of 14 days of incarceration followed by 36 months of probation.  First, as discussed above, the fact that Campanella stormed the Capitol five months after being convicted of another trespassing offense reveals a disturbing pattern of disrespect for the law.  Second, although Campanella accepted responsibility by stipulating to the facts underlying his guilt and resolving his case via plea, his conduct in encouraging others to unlawfully enter the Capitol showed an immediate lack of remorse.  Since January 6, Campanella has not taken any steps to denounce his actions on January 6, 2021, and six months after the riot told police that investigating the riot was a waste of time.  As such, 14 days of incarceration followed by 36 months of probation is also needed for specific deterrence.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2]  This Court must sentence Campanella based on his own conduct and relevant characteristics, but should

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Campanella has pleaded guilty to Count Counts Three and Four of the Information, charging him with disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol, in violation of 40 U.S.C. § 5104(e)(2)(D), and parading, demonstrating, or picketing in any Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).  These offenses are Class B misdemeanors.  18 U.S.C. § 3559.  Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9.  The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  "Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006).

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases.  Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity.  But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records.  After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several

12

factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012); *see United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Martinez*, 23-cr-39-TSC, the defendant pled guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building). In that case, the defendant entered the Capitol through the Rotunda Door, remained in

the Capitol for approximately 50 minutes, and witnessed violence against officers in the Rotunda. The defendant served in the military and had a limited criminal history (one conviction for driving while intoxicated). He was sentenced to 14 days of imprisonment followed by 12 months of probation.

In *United States v. Chang*, 21-cr-703-RDM, the defendant, a veteran and former county sheriff's officer, pled guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building). The defendant entered the Capitol through the Rotunda Door and remained in the Capitol for approximately eight minutes. Like Campanella, he saw uniformed officers as he entered the building. The defendant also videoed other rioters attacking law enforcement. That defendant was sentenced to 36 months of probation with 45 days of home detention.

Though Campanella did not remain in the Capitol as long as the defendants in *Martinez* and *Chang*, Campanella's cellphone videos demonstrate that, like *Martinez* and *Chang*, he was aware of violent encounters with police. In addition, unlike *Martinez* and *Chang*, Campanella encouraged other rioters to enter the Capitol.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence

differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.   Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3]   Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b).   At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3).   *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here.   The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Campanella must pay $500 in restitution, which reflects in part the role Campanella played in the riot on January 6.[4]   Plea Agreement at ¶ 11.   As the plea

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Campanella's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

## VI.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Campanella to 14 days of incarceration on Count Three followed by 36 months' probation on Count Four on Counts Three and Four to run concurrently. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Campanella's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    s/ *Anna Z. Krasinski*
ANNA Z. KRASINSKI
Assistant United States Attorney
New Hampshire Bar No. 276778
United States Attorney's Office
Detailed from the District of New Hampshire
(202) 809-2058
anna.krasinski@usdoj.gov